The first case for argument this morning is 22-1410, Pacific Biosciences v. Personal Genomics. Mr. Reines, good morning. Thank you, Your Honor, and may it please the Court. Ed Reines on behalf of PacBio. The PTAB committed error by upholding the validity of claims of the 441 patent over HSIBI based only on an overly narrow claim construction of the preamble term identifying. The PTAB conflated the word identifying a single biomolecule with detecting a single biomolecule. That's important both at a linguistic level and a technological level. First, starting with the technology, there are two ways that you can identify a biomolecule. Claim 16 and on are about sequencing. This is primarily about sequencing. There you would think of identifying the sequence is the way to think about it. There are two ways to do that. One is you can detect one molecule and see what its base letters are using sequencing as the example. Another way to do it is to take an original biomolecule, amplify it so you have a larger community, get a stronger signal out of it, and then use that as the way. The point is the patent's invention, innovation at least, is the compactness of having a detector that's extremely proximate to the nucleic acids. In that instance, the patent makes clear that it can be used, this technique can be used, both with what we call the ensemble approach, which is where you take an original biomolecule and you amplify it, copy it, or with the single molecules, the preferred embodiment. But the claim starts an apparatus for identifying a single biomolecule, right? Correct. The point there is that identifying is finding out what that biomolecule, you start with the single strand, what its letters are. Then you can do that by copying it so that you have 10 that are all the same and getting the signal from there. The patents use both identifying and detecting elsewhere in the claim set. They need to be treated, should be treated differently, and are treated in the art as differently. I don't remember. Is the word detecting ever used in conjunction with the word single? No. No, it is not. I mean, I guess it seemed to me that the word single is what is doing quite a lot of work in the relevant claim language, making it pretty natural to think that identifying a single molecule means when you have a single molecule in front of you, you are identifying its character just from that. Okay, and that's referring to detecting. I think the concept of single is... I'm sorry, I didn't understand what you just said, and that's referring to detecting. I was talking about identifying. Right, and then you said, and then you determined that by only looking at that original single, and I was saying that's detecting, in the art and how that's treated. But it's a good question, and why is single there? And the reason single there is that the main teaching is to have these compact detectors on a silicon chip, is the basic idea, and have thousands of them. I mean, I think they speak maybe even more than thousands of them. And then in each place, you do one sequence. That's just an exemplary. One sequence in each place, and so it's saying you take, you look at one. The other way to do that is you could have all kinds of heterogeneous sequences on a field, and do probes and do it another way. So the point of single is you're breaking it up into all these little tiny limits, fields of vision. But the point that I think really brings it home is that the claim set, which has to be read together, as everyone knows, makes clear that the patent is claiming the use of what I'm calling ensemble sequencing, which is just another way to say this kind of detection of the original with its copies to strengthen signal. And that's actually conceded. The board said so at 18 and 19. But importantly, in the principal brief of PGI, they say the board's construction already covers detection of a signal source from multiple molecules, and already encompasses detection of signal from multiple molecules. This is on page 45 of their brief. PGI recognized the board has said that claims 26 and 30 cover exactly what, Your Honor, Judge Rana, you posited might not be something that's worth covering here because of the word single. And so we have the claim set covering it. So it can't be something that's excluded by the specification or by the principle of the convention, because it's claimed. And again, you can look at the top of page 19 of the PTAB decision, or you can reference the acquiescence of PGI that that's in fact what the board did. They tried to take the wind out of our sails by saying, look, you're accusing the board of not covering ensemble sequencing. But they did say, they acknowledged that it was something odd about a dependent claim saying, or independent claim says, you have to be able to do it with a single molecule, and nothing more in the field division. In addition, you have to be able to do it with an amplified. It's a great question, and it's really putting your finger on the issue that's on appeal. That's why it's a disputed issue that's an appellate argument. And I think the answer to that is the fact that the claims contemplate its use, even if you accept this capability point. Let's just accept your assumption. It can't be that the broad term identifying, which goes to identifying what the molecule is, i.e. what its sequence is, is read narrowly to mean essentially detecting. Because it's been eschewed by the patent, but the patent tells you that you can use the invention with ensemble sequencing. If the patent is saying you can get the benefits of the innovation via ensemble sequencing, even if it's alternative, even if you jerry-rig some capable apparatus, but you can go do it and it's claimed. If you take our apparatus and you use it for ensemble sequencing, you're infringing. It can't be that we're taking the term identifying and conflating it from its natural use, which would encompass detecting either via a single detection, or taking the term identifying and amplifying it. The way that the method claim, this is, which one is it? 26 or 30 both have this concept of ensemble sequencing. Those are methods, but they would require, in order to infringe, using an apparatus that could be used with only one molecule in the field division, but using it for doing the identification with a large group. Right. I'm saying, yes, that is what, it's a little confused, but let's simplify it out and say that's what they said. I think the important point there is, if they're telling you you can use the innovation, that is their small field with lots of cells, with ensemble sequencing, it can't be that it's been disclaimed, or it can't be that we should be limiting it to the preferred embodiment. Because they're saying that the innovation can be used with that, even in an alternative mode. I hope you understand that. The point being, even this idea of capability is improper. I do want to tackle that assumption. There's nothing in claim one that tells you that you have to use single molecule detection as compared to single molecule identification. The patent, also, let's keep in mind, in the sequencing modality section, which is column 13 on the top, the first thing they give you is, actually column 12 at 35, the first thing is ensemble sequencing, Shandor and the 249 patent. The first thing, and this is what the board says on A19, sequencing modalities are mentioned that may be used with the claim apparatus of the 4441 patent, and which involve the detection signal for multiple molecules of the same species. So in the description of the invention, it says you can use our invention with these to judge post question. You're identifying just one single sequence, but they're doing it by taking the original sequence and then amplifying it, and then using the greater signal that you get for amplification to detect that single mode and do that identification. I just think that there's conflating identification to detection doesn't make sense when the PTAB itself is saying the claims encompass this multiple molecule detection process. And claim 26, that wasn't in the prior art? Not, well, we believe it's all in the prior art, but not with the innovation that they're really... In itself, the way you're reading it, it wasn't in the prior art, covered by the prior art. We would say it's all covered by the prior art, but what they're saying the innovation is, if you read the patent and you accept the other side, the only thing that they really could identify is the distance between the nucleic acid and the detector. These claims are rather short, and they just speak of space apart from the light detector by a distance of less than or equal to 100 micrometers. So just have really close proximity, that's the key here, according to them. I do want to clarify one thing. Claim 30 does say detecting the biomolecule on the apparatus, because you asked me if there's any that say single, and it doesn't say single, but it uses singular. So just to be fair to your question, and I do want to address this, claim 30 says you detect a biomolecule, and then it says affixing one or more biomolecule. I think it's not a mistake that it's singular there, because it's saying that it's copies. So when it's speaking of biomolecule, it's talking about the sequence, if we're talking about sequencing, which I believe... I don't know whether there was discussion of this in the brief or before the board, but we have these cases where we start with, if you want to know what the means, you look back, what the antecedent was, and here the antecedent basis is, I think it maybe comes out the same thing, either a biomolecule, which, as you know, ordinarily means one or more, and then you get the one or more in the first clause. Does that matter? I think what matters the most is, and detecting the biomolecule on the apparatus, which is the last phrase of claim 30, and it's probably small type there, and I apologize, but it says affixing one or more biomolecule, because they're all the same, because they're copies, and detecting the biomolecule on the apparatus. And so it's speaking singular there, because even though there's more than one, when it uses the term biomolecule for identifying a single biomolecule, it's talking about a type, i.e. A, C, T, G, F, whatever it is. So I see I'm into my time, I do obviously want to respond, but I'd love to take questions. I think it's the NOVA review, the claim constructions are just wrong, it's conflating identifying with detecting, and detecting can be done two ways. Can I just ask you one quick follow-up on 30, which pervades a lot of the analysis we've referred to. The answer to you, arguably, is that claim 1 only says capable of, which means that there's not an inconsistency between what you're saying in claim 30 and claim 1. That seems to be the theme, right? I'm not sure that gets them all the way, but the point is, there's two responses. The first one is the fact that they say, even if they say it has to be capable of single molecule detection, the fact that they say it can also use multiple molecule detection, which is conceded in their briefing, and it's on page A19, makes the point. You can't be narrowing identification unduly because of the theory that preferred embodiment is single molecule detection, if it's actually being embraced by a claim, even as an alternative. The second thing is, there's nothing in claim 1 that mandates the capability of single molecule detection. This is critical. All that the board relied on was the phrase, identifying a single biomolecule. That's all they relied on. This idea that it's got to be limited to the capability of single molecule detection means that you're saying identifying is detecting. It's not, especially not in this art. Also, if the apparatus is for identifying the result, is a single biomolecule where you identify it like a sequence, the fact that claims 26 and 30 are narrower, tells you that they have to be ways of identifying a biomolecule, and yet they're unquestionably directed in sample sequencing. Thank you. Thank you for the question. Let's open the other side. Mr. Orso, good morning. Good morning, Your Honors. May it please the court. I'd like to start by responding to the argument by counsel, and then I'd like to speak specifically to some of the issues in the 1163 IPR. First, the board's construction does not limit how a single biomolecule is to be identified. Claim 1 is an apparatus claim, not a method claim. The board's construction simply, as we've said, specifies a capability for that apparatus. In fact, the board expressly noted in Appendix 87 that an apparatus for identifying a single biomolecule may also identify multiple molecules. And 26 or 30 are method claims, right? That's right, Your Honor. Identifying multiple molecules is exactly what an apparatus does when it's used with  It identifies multiple molecules in an ensemble. Nowhere does the patent describe the ensemble approach as identifying a single biomolecule. And there's no evidence that the ensemble approach was understood in the art as a way of identifying a single biomolecule. The 441 patent does describe ways of identifying a single biomolecule. They include base extension sequencing, continuous sequencing, ligase-based sequencing. The board's construction doesn't limit the claims to any of those methods. Second, the board's construction does not... I just want to clarify something, and maybe it's a mere language matter as opposed to a substantive. If you do the amplification and create tens of thousands of copies all hanging around together, and if the amplification is enough error-free, wouldn't you be identifying each one of the tens of thousands when you identify all of them by getting very bright blue or something to tell you what the base is of, again, by assumption, error-free copies? You're identifying the ensemble in that situation, and it may actually end up being the case... Isn't identifying a group of 10,000 identical molecules, in fact, identifying each one of the 10,000? I don't think it is, Your Honor. I think identifying the ensemble is fundamentally different than identifying any individual molecule. And your point about the fact that it's error-free is important, right, because of that issue of... Of the fact. Just assumption in my question. Right. I assume, in fact, that in the real world it's not entirely error-free. Right. And maybe even the patent talks about that. Right. So what you're actually identifying is whatever the dominant species is in the ensemble. But you're identifying the ensemble in that situation. You're not identifying any individual molecule. And if you started with an individual molecule, that may not be in the ensemble. So, secondly, let me say, the Board did not conflate identifying... Does your argument or the Board's construction depend on accepting the view that you just articulated? I'm not sure. The way I've been thinking about it, it doesn't depend on that. I don't think... No, I don't think it depends on that. But I think that is how I view it. Yeah. Okay. The Board did not conflate identifying with detecting. It simply resolved the party's dispute about the meaning of the preamble using the very framing that PacBio put forth in the petition. So in the petition, PacBio stated that the question was whether the apparatus must be capable of detecting, quote, a signal from only one molecule or merely, quote, a signal arising from multiple molecules. That was PacBio's framing. And so the Board simply resolved the dispute in terms of the framing that PacBio identified. And in any event, the 441 patent makes clear that it's describing apparatuses that identify molecules by detecting them. And in fact, in the claims you see, the claims require a light detector. And so the Board didn't conflate identifying and detecting by construing an apparatus for identifying a single biomolecule according to what the apparatus is capable of identifying, of detecting signals from. Third, the Board's construction does not exclude any disclosed embodiments and is not inconsistent with Claims 26 and 30. As counsel noted, PacBio's position is that the patent discloses embodiments using the ensemble approach and that Claims 26 and 30 either require or describe the ensemble approach. PGI disagrees with that reading of the specification and the reading of the claims. We did not concede that. If you look at the portion of the brief that counsel mentioned, you will find that we did not concede that. It doesn't matter, though, in the end, because even if PacBio is correct, as the court has acknowledged earlier, there would be no inconsistency between the Board's construction of Claim 1 and those dependent method claims because the Board's construction does not preclude using the apparatus of Claim 1 to detect an ensemble of biomolecules. The Board's construction certainly doesn't require the claimed apparatus to be incapable of detecting a signal from an ensemble of biomolecules. If there are no further questions on that, I'd like to turn to the 1163 IPR. The Board erred in concluding that each of Chow Mein and Weisbuch discloses an apparatus capable of detecting a signal associated with a single biomolecule. PacBio concedes that Chow Mein discloses an apparatus for identifying ensembles. You can see that, for example, in the yellow brief, page 27. The only evidence that PacBio contends is substantial evidence that Chow Mein discloses a single-molecule detection is the two-sentence excerpt about Figure 8 from Chow Mein. That excerpt contains no mention of biomolecules, let alone a single biomolecule, and PacBio made no attempt to establish the stringent standards of inherency had been met. PacBio argues that the excerpt discloses single-molecule detection in each opening 50 of Figure 8, but according to PacBio's own expert, none of those openings contains a single biomolecule to be identified. Can you go back to your first one? We're looking here at the bottom of appendix page 5551, right? Page 16 of Chow Mein, bottom. Yes. These openings delimit very small observation volumes, for example, with a diameter of 150 nanometers, where the detection and observation of individual chromophores in solutions with high concentration. Is that, that's the, that word individual is, am I remembering it right? It does say individual. The most important thing that the board uses for this? The board was focused on individual. Right. So before you started getting into, you know, your second point about this, you said something about no inherency and biomolecules, and can you both say that again and remind me if you mentioned this point in your red brief and to the board. Yes, we do mention that point. Your Honor, the- Did you mention this point to the board? I believe we- That this might be identifying chromophores that are not biomolecules? I believe we did, yes, Your Honor. Okay. This paragraph that we have at the bottom of appendix- In a biosensor. Sorry. This is a biosensor. Yes, sir. Yes, Your Honor. Okay. This paragraph at the bottom of appendix 5551 contains no mention of biomolecules at all. Now, they're welcome to try to establish that there is inherent disclosure of a biomolecule in connection with this paragraph, but they didn't make any effort to do that. And so that's the point I was making just a moment ago. Did the board say something about this point? The board conclusively said, Dr. Nykerk, their expert, says there's a biomolecule there, so therefore there's a biomolecule there. I'm paraphrasing. Okay. Go ahead. So according to PacBio's own expert, none of these openings 50 in figure 8 actually contains a single biomolecule to be identified. Rather, each of the openings contains more than one biomolecule to be identified. And that's consistent with PacBio's acknowledgement that the apparatus of figure 8 is made by spotting probes into zones, where in the words of PacBio's own expert, quote, each zone contains probes specific for a particular molecular species. The idea being to affix multiple instances of the target species so as to detect a signal from that particular species. That's appendix 5362. Also, interpreting that two-sentence excerpt from figure 8 the way PacBio urges is inconsistent with other parts of Xiaomain. Xiaomain discloses that its biosensors have a sensitivity of 1 chromophore per micron squared. And Xiaomain discloses that its photodetectors have unit dimensions on the order of 10 microns, which works out to an area of 78 microns squared. At that disclosed sensitivity of 1 chromophore per micron squared, a 78 micron squared photodetector is able to detect only as few as 78 chromophores, not 1 chromophore. Now, PacBio purported to have its expert calculate a different sensitivity, different than the one that's expressly disclosed in Xiaomain, 1 chromophore per micron squared. But that calculation is entitled to no weight for at least two reasons. First, the expert himself admitted that it's based on assuming that photodetectors placed above a substrate with chromophores on it capture only 1% of the luminous flux emitted into the air. The expert provided absolutely no support or justification for assuming that. But secondly, and more importantly, that assumption was incorrect because it resulted in the expert calculating an increase in collection efficiency that's inconsistent with the collection efficiency expressly set forth in Xiaomain. So the expert calculated that his 1% assumption results in a collection efficiency increasing by a factor of 400. That's at appendix 7428. But Xiaomain expressly states that the increase in collection efficiency will be only, quote, several tens of times greater. An unrebutted expert testimony established that several tens would be 30 or 40 or 50, not 400. So not only is the calculation based on arbitrary assumption, it directly contradicts the express disclosure of Xiaomain. Let me just address Weisbuch very, very briefly. What PacBio contends is substantial evidence that Weisbuch discloses single molecule detection is just as inadequate as what it points to for Xiaomain. PacBio points to a two-sentence excerpt from its expert's declaration and a turning argument from six paragraphs from Weisbuch. The two-sentence paragraph from its expert does not even assert that Weisbuch discloses single molecule detection. And the turning argument offered by PacBio obviously is not evidence. The only evidence about those portions of Weisbuch that counsel relies on came from PGI's expert, who described and explained why Weisbuch does not disclose an apparatus for identifying a single biomolecule. Thank you. Unless there are any questions, I'd like to reserve the balance of my time. Thank you. Thank you. We'll restore three minutes every panel. Thank you, Your Honor. I appreciate that. The argument that in ensemble sequencing there can be no single molecule identification is tautological. I mean, the argument is, well, it's single molecule identification, so that means you only have to be detecting one. Well, that's not true, because there's ensemble detection. But let me try to phrase it a different way that may be helpful. When you have, let's take a simple ATTT sequence, and you have that fragment of DNA, and you want to identify it, that's the whole point of this in terms of the sequencing. You want to get that, and you have that. And there's two ways to do it. One is you just look at that one. The other way is you amplify it at the detection spot, as claimed by them, and you make multiple copies. In both cases, your single molecule identification is of the original DNA, because that's what you want to discover. So it is single molecule identification, because even though you're using copies, the copies are just a vehicle, a brighter blue to use your honors reference, to detect what you have in the detection zone, and then identify what you started with. So the single molecule is that you're just doing one sequence. To accept the opposing argument and to accept the board is to just say identification is the same as detection. And identification is what something is, i.e. the sequence. Detection is how you go about determining that. They're two different concepts. This is de novo review, and this whole capability point is there's nothing about capabilities, nothing in the body of the claim that tells you how you achieve this detection until you get to 26 and 30, where it's pretty clear that it's ensemble, because it tells you that you're amplifying. So on one hand, they want to claim it, ensemble sequencing, and everyone seems to agree, at least they're reserving their right, but they acknowledge, the board acknowledged, that ensemble detection can be part of this invention. But then they want to say that somehow there's this capability that's required, and the only thing they're relying on is preamble. Preamble is the result. The result is you've identified the sequence. Detection is the mechanics of how you do it. I really can't add more than that, but I would really urge the court to look hard at this on a de novo level, as to whether they can claim something and then say, but single molecule identification somehow doesn't cover it, even though it's an independent claim from which these claims depend. As to the other arguments, they're incredibly fact-bound. It's a biosensor, as Your Honor pointed out. Are you referring to the cross-appeal? Yeah, the cross-appeal. This is competing expert testimony, and frankly, it's right in the face of the references. But just taking Chow Mein, for example, it's a biosensor, and it refers to biomolecules in the disclosure. What else is it talking about? Thanks. Thank you. Well, so Mr. Reines covered it, so you've got your minutes to respond. Only on the cross-appeal, obviously. Thank you, Your Honor. There's nothing odd about an independent claim being capable of identifying. Well, Your Honor, I don't need your help, Mr. Reines. Thank you. Your response time is exclusively on the cross-appeal. Right, Your Honor. Well, he spent 20 seconds on the Chow Mein. Okay, so if you have nothing to respond, that's fine with us. Yeah, Your Honor, I don't think there was anything to respond to with respect to Chow Mein. Okay, that doesn't open up the door for you to respond to the other side. Thank you, Your Honor. Thank you very much. Thank you. Thank both sides. The case is submitted.